[979 NE2d 1150, 955 NYS2d 823]

In the Matter of COUNTY OF ERIE, Respondent, v CIVIL SERVICE EMPLOYEES ASSOCIATION, LOCAL 815, Appellant.

Argued September 12, 2012; decided October 25, 2012

**APPEARANCES OF COUNSEL**

*Lipsitz Green Scime Cambria LLP*, Buffalo (*Diane M. Perri Roberts* and *Kenneth E. Webster* of counsel), for appellant.

*Schrader, Israely, DeLuca & Waters LLP*, Getzville (*R. Scott DeLuca* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs.

On June 9, 2009, the Civil Service Employees Association, Local 815 (CSEA) filed a grievance on behalf of unnamed employees of the Erie County Board of Elections (the Board), alleging that the collective bargaining agreement (CBA) between Erie County (the County) and CSEA was violated when the Board modified the work hours of employees assigned to school district elections in May 2009 in a way that deprived these employees of overtime compensation. After the Board denied the grievance, CSEA notified the County of its intent to arbitrate the dispute, prompting the County to move for a stay. Supreme Court granted the County's motion and denied CSEA's cross motion to compel arbitration. Upon CSEA's appeal, the Appellate Division affirmed (82 AD3d 1633 [4th Dept 2011]), as do we.

Section 3-300 of the Election Law vests every board of elections with exclusive power to

> "appoint, and at its pleasure remove, clerks, voting machine technicians, custodians and other employees, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefor by the local legislative body and shall secure in the appointment of employees of the board of elections equal representation of the major political parties."

"By enacting [section 3-300], the Legislature furthered the constitutional mandate of bipartisan participation in the functions of boards of elections and vested [them] with complete and exclusive control of their personnel and the performance of their duties in that highly sensitive governmental area" (*County of Chautauqua v Chautauqua County Employees' Unit 6300 of Local 807 of Civ. Serv. Employees' Assn., Local 1000, AFSCME, AFL-CIO*, 181 AD2d 1052, 1052 [4th Dept 1992] [citation omitted]).

In *County of Chautauqua*, Supreme Court vacated an arbitrator's award in favor of an elections technician let go by the county board of elections. The Appellate Division affirmed in light of section 3-300, concluding that the county could not negate or restrict the county board of elections' statutory removal powers by way of collective bargaining (*see also Matter of Board of Elections of County of Westchester v O'Rourke*, 210 AD2d 402 [2d Dept 1994] [deciding that, in view of section 3-300, the board of elections was not required to comply with the job posting procedures in the CBA between the county and the public employees' union, and declining to issue a broader declaration

with respect to application to the board's employees of provisions in the CBA]). Similarly, the Board's scheduling of its employees' work shifts on election day so as to provide adequate coverage from the time the polls opened at 7:00 a.m. until 10:00 p.m., about an hour after the polls closed, without incurring overtime payment obligations falls within its authority under section 3-300 to "prescribe [its employees'] duties . . . and establish their salaries within the amounts appropriated therefor by the local legislative body."

CIPARICK, J. (dissenting). Because I believe section 3-300 of the Election Law does not preclude the County of Erie (the County) and the Civil Service Employees Association, Local 815 (CSEA) from negotiating the terms of overtime compensation for unnamed employees of the Erie County Board of Elections (the Board) in a collective bargaining agreement (CBA), I respectfully dissent.

Election Law § 3-300, titled "Board employees; appointment," provides:

> "[e]very board of elections shall appoint, and at its pleasure remove, clerks, voting machine technicians, custodians and other employees, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefor by the local legislative body and shall secure in the appointment of employees of the board of elections equal representation of the major political parties."

The majority construes the Board's statutory authority to "prescribe [its employees'] duties . . . and establish their salaries within the amounts appropriated therefor by the local legislative body" (majority mem at 1072, quoting Election Law § 3-300) to encompass control of overtime compensation. I disagree with this overly broad interpretation and would conclude that overtime compensation falls outside the scope of the statute.

The majority's reliance on *County of Chautauqua v Chautauqua County Employees' Unit 6300 of Local 807 of Civ. Serv. Employees' Assn., Local 1000, AFSCME, AFL-CIO* (181 AD2d 1052 [4th Dept 1992]) and *Matter of Board of Elections of County of Westchester v O'Rourke* (210 AD2d 402 [2d Dept 1994]) is misplaced. *County of Chautauqua* stands for the narrow proposition that the terms of a CBA cannot interfere with the county board of elections' removal powers under section 3-300 of the Election Law (*see* 181 AD2d at 1052). *O'Rourke* similarly stands

for the limited proposition that a provision in a CBA requiring the board of elections to post its vacancies is unenforceable because such provision would necessarily usurp the board of elections' authority to appoint its employees under section 3-300 (*see* 210 AD2d at 402). Since the provision in the CBA at issue here relates to overtime compensation and implicates neither the Board's section 3-300 appointment nor removal powers, these cases lend no support to the majority's position.

In my view, overtime compensation is better understood as a benefit, like health care or vacation leave, that is clearly a proper subject of negotiation between the County and CSEA in the CBA.* Accordingly, since the terms of this CBA concerning overtime compensation do not contravene the Board's section 3-300 enumerated powers, I would reverse the order of the Appellate Division and grant CSEA's motion to compel the County to arbitrate the subject grievance.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Judge CIPARICK dissents and votes to reverse in an opinion in which Chief Judge LIPPMAN concurs.

Order affirmed, with costs, in a memorandum.

[979 NE2d 802, 955 NYS2d 543]

---

* Indeed, it should be noted that CSEA has negotiated on behalf of the unnamed employees of the Board since at least 1971. The overtime compensation provision in the CBA was last negotiated by the County and CSEA in October 2004.